IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CITY OF PORTLAND,**

          Plaintiff,

    v.

**HOMEAWAY.COM, INC. and
HOMEAWAY, INC.,**

          Defendants.

No. 3:15-cv-01984-MO

OPINION AND ORDER

**MOSMAN, J.,**

When new technologies are developed, there is often a tension between those new technologies and efforts to regulate them within a framework built around older technologies. This case is an illustration of that tension. Plaintiff City of Portland sued Defendants HomeAway.com, Inc. and HomeAway, Inc. (collectively "HomeAway") for failure to comply with various provisions of the Portland City Code collectively known as the "Transient Lodgings Tax." HomeAway moves to dismiss the City's complaint. I GRANT HomeAway's Motion to Dismiss [7] and DENY injunctive relief.

## I.    BACKGROUND

HomeAway operates an online vacation rental marketplace where people interested in making their homes available for short-term rental may advertise their property. Travelers interested in renting a property can access HomeAway's websites to search for and find available properties. HomeAway puts the traveler in contact with the owner or lessee of the property to sort out the details of the lodging arrangement. HomeAway has property listings located all over the world, including in Portland.

In 1972, the City of Portland enacted a Transient Lodgings Tax Ordinance, Portland City Code ("PCC") § 6.04.010, *et seq.* ("the Ordinance"), providing in part that "[e]very [hotel] operator renting rooms or space for lodging or sleeping purposes in this City . . . shall collect a tax from the transient" to be remitted to the City. PCC § 6.04.030(A). The Ordinance applies to hotel "Operators," defined by the Ordinance as "the person who is proprietor of the hotel in any capacity. Where the operator performs his/her functions through a managing agent of any type or character other than an employee, the managing agent shall also be deemed an operator . . . ." PCC § 6.04.010 (M). The Ordinance authorizes the City to levy fines against Operators that do not comply with the Ordinance. *See, e.g.*, PCC § 6.04.170.

On January 21, 2015, the Portland City Council passed amendments to the Ordinance that took effect on February 20, 2015. The apparent goal of the City Council in passing the amendments was to extend the Ordinance to cover "Booking Agents." The Ordinance defines "Booking Agent" as "an Operator or any person that provides a means through which a Host may offer a Short-Term Rental for transient lodging occupancy. This service is usually, though not necessarily, provided through an online platform and generally allows a Host to advertise the Short-Term Rental through a website . . . ." PCC § 6.04.010 (D). The Ordinance expressly lists "[o]nline travel booking sites" as examples of "Booking Agents." *Id.*

After the City Council passed the 2015 amendments to the Ordinance, the City sent HomeAway notices in which the City contended that HomeAway was in violation of various provisions of the Ordinance. (*See* Compl. [1], Exs. 3-8.) Included in these notices was an assessment of $2,540,106 in presumptive taxes, penalties, and interest. (*See* Compl. [1], Ex. 7.) HomeAway refused to pay the assessment, claiming it was not in violation of the Ordinance because it was not an Operator or Booking Agent and therefore did not fall under the Ordinance's terms. On October 21, 2015, the City filed this

2 –OPINION AND ORDER

lawsuit against HomeAway seeking a declaratory judgment that HomeAway is an Operator or a

Booking Agent, a reduction of fines to judgment, a reduction of presumptive taxes to judgment, and an

injunction enjoining HomeAway's operations in Portland.

On May 17, 2016, I held oral argument. From the bench, I issued a ruling GRANTING

HomeAway's Motion to Dismiss [7] and DENYING injunctive relief. The purpose of this Opinion and

Order is to further clarify my rulings.

## II.      LEGAL STANDARD

When reviewing a motion to dismiss, the court must "accept all factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A court need not accept legal conclusions as true

because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss

for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and

conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.*

(quoting *Twombly*, 550 U.S. at 555, 557). While a plaintiff does not need to make detailed factual

allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant "fair

notice" of the claim and the grounds on which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(per curiam) (citing *Twombly*, 550 U.S. at 555).

## III.     DISCUSSION

The City's claims all depend on HomeAway being either an Operator or a Booking Agent as

defined under the Ordinance. HomeAway contends that the City's complaint fails to allege that

HomeAway is either an Operator or a Booking Agent and therefore all claims should be dismissed. I find the City has failed to allege HomeAway is an Operator. I further find the Portland City Charter does not grant the City the authority to tax HomeAway as a Booking Agent, and the City has not sufficiently alleged enough facts to tax HomeAway as a Booking Agent under the alternative authority of the relevant Oregon statute. Finally, I find the Ordinance does not place any duties and responsibilities on Booking Agents and, accordingly, I decline to reduce to judgment any fines assessed against HomeAway as a Booking Agent. I set forth my reasoning for these findings below.

### A. HomeAway's Form 10-K Filing

In its Response to HomeAway's Motion to Dismiss, the City makes numerous factual allegations based on information contained in HomeAway's Form 10-K filing with the Securities Exchange Commission. HomeAway objects to my consideration of any facts included in the Form 10-K filing and not contained in or attached to the City's complaint and argues that the City has mischaracterized the company's disclosures. Therefore, as a threshold matter, I must determine whether it is appropriate in this case to consider a defendant company's Form 10-K filing when the company contests the facts contained in the filing. I find it inappropriate.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Riachard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). In fact, Rule 12(b)(6) mandates that if "matters outside the pleading are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment" rather than a motion to dismiss. FED. R. CIV. P. 12(d) (emphasis added). There are, however, two exceptions to the requirement. The first exception is "a court may consider material which is properly submitted as part of the complaint . . . . If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily

relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citations and internal quotation marks omitted).

The second exception to the requirement, under Federal Rule of Evidence 201, allows a district court to take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Under this exception, courts can consider securities offerings and corporate disclosure documents, such as Form 10-K filings, which are publicly available. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n. 7 (9th Cir. 2008); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1235 (N.D. Cal. 2014) ("SEC forms such as a Form 8–K or Form 10–K are matters of public record and may be subject to judicial notice. Accordingly, I take judicial notice of Wynn's . . . Form 10–K from 2011.") (citation omitted). But it is only appropriate for me to "to take judicial notice of the content of the SEC Forms [ ] and the fact that they were filed with the agency. *The truth of the content, and the inference properly drawn from them, however, is not a proper subject of judicial notice under Rule 201.*" *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008) (emphasis added); *see also Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152, 1157 (D. Or. 2015) ("The Court takes judicial notice of the SEC filings . . . not for the truth of the facts recited therein but for the existence of the records."); *Gerritsen v. Warner Bros Entm't Inc.*, 112 F. Supp. 3d 1011, 1032 (C.D. Cal. 2015) (collecting cases from other circuits and various district courts within the Ninth Circuit).

Here, because the City has not attached HomeAway's Form 10-K filing to its complaint nor has the City's complaint necessarily relied on the filing, the first exception does not apply. The second exception also does not apply because neither party has formally requested I take judicial notice of HomeAway's Form 10-K filings. Even if the City were to request I take judicial notice of the Form 10-K filing, to do so would be improper because the City is relying on the truth of the contents of the filing

to prove the substance of its claims. Accordingly, I will not consider the contents of HomeAway's Form 10-K filing in ruling on HomeAway's motion.

**B.  HomeAway as an "Operator"**

The City's second, fourth, and sixth claims are predicated on HomeAway being an "Operator" under the Ordinance. The Ordinance defines an Operator as a "person who is [a] proprietor of the hotel in any capacity. Where the operator performs his/her functions through a managing agent of any type or character other than an employee, the managing agent shall also be deemed an operator . . . ." PCC § 6.04.010 (M). In other words, there are two ways the City can allege HomeAway is an Operator: first, if it alleges HomeAway is the proprietor of the hotel; and second, if it alleges HomeAway is a managing agent performing the proprietor's functions. I find the City has failed to allege HomeAway is either a proprietor of a hotel or a managing agent and therefore has failed to allege HomeAway is an Operator.

**1.  *Proprietor of a Hotel***

HomeAway is an Operator under the Ordinance if it is the proprietor of a hotel. The Ordinance defines "hotel" as "any structure, or any portion of any structure which is occupied or intended or designated for transient occupancy for 30 days or less for dwelling, lodging, or sleeping purposes . . . ." PCC § 6.04.010(K). The Ordinance does not, however, define the term "proprietor." Terms that are not defined in the Portland City Code must be construed in accordance with their ordinary usage and in their context. *See* PCC § 1.01.050(D); *see also State v. Langley*, 314 Or. 247, 256, 839 P.2d 692 (1992) (illustrating the rule that "words of common usage" should "be given their plain, natural, and ordinary meaning"). Therefore, before I can determine whether the City has sufficiently alleged HomeAway is a proprietor in the hotel context, I must determine the ordinary meaning of proprietor.

HomeAway argues that the plain meaning of "proprietor" implies full or partial *ownership* of a business or property. In support of this argument, HomeAway relies on several dictionary definitions. *See, e.g., Proprietor*, Black's Law Dictionary (10th ed. 2014) ("An owner, esp. one who runs a

business."); THE AMERICAN HERITAGE DICTIONARY (4th ed. 2000) ("1. One who has legal title to something; an owner. 2. One who owns or owns and manages a business or other such establishment."). HomeAway contends these definitions demonstrate ownership is necessary for proprietorship. The City responds by citing a different, much broader dictionary definition of proprietor. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1819 (unabridged ed. 2002) (defining "proprietor" in part as, "one having an interest (as control, present use, or usufruct) less than absolute and exclusive right").

   I find the definitions HomeAway offers accurately convey the ordinary meaning of "proprietor," especially when taken in the hotel context. One would not ordinarily understand "proprietor of a hotel" to include people who simply have control over the hotel, use the hotel, or have the right to enjoy the use and advantages of a hotel. Instead, one would understand a proprietor of a hotel to be the owner of the hotel—ownership is a central element of proprietorship.

   The City has not alleged, nor can it allege, that HomeAway is an owner of hotel properties. In fact, the City has claimed that the Hosts, rather than HomeAway, are the owners of the various properties listed through HomeAway. (*See* Pl. Resp. [18] at 2 ("HomeAway operates its short-term-rental business by soliciting listings *from property owners* . . . .") (emphasis added).)

   At oral argument, the City asserted that HomeAway is in fact the owner of a "virtual hotel" and therefore a proprietor. However, this argument directly contradicts the definition of "hotel" as set forth by the City itself in the Ordinance. The Ordinance limits its definition of hotels to a "structure" or a "portion of [a] structure." *See* PCC § 6.04.010(K). Therefore, while HomeAway may be a proprietor of a virtual hotel business, a virtual hotel is not a hotel at all under the terms of the Ordinance. Accordingly, I find that the City has not met its burden in alleging that HomeAway is a proprietor of a hotel.

## 2.  *Managing Agent*

The second way for HomeAway to be an Operator under the Ordinance is if it is a managing agent. The Ordinance does not define the term "managing agent," so I am left once again to determine the undefined term's meaning given its ordinary usage and context. *See* PCC § 1.01.050(D).

For its suggested definition of managing agent, HomeAway cites Black's Law Dictionary, which defines a managing agent as any "person with general power involving the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal." *Managing Agent*, BLACK'S LAW DICTIONARY (10th ed. 2014). The City proposes that I splice the separate definitions of "manager" and "agent" together to arrive at a new definition of managing agent considerably broader than the Black's Law Dictionary definition. The City would define managing agent as "an agent that manages a particular phase or activity within a business or institution" on behalf "of another by authority from him."[1] I reject this Frankenstein approach to defining a legal term of art, the definition of which is readily ascertainable by referring to a reputable legal dictionary such as Black's. *See Doe v. Medford Sch. Dist. 549C*, 232 Or. App. 38, 48, 221 P.3d 787 (2009) ("When the legislature employs a term of art, however, that term is not necessarily given its ordinary meaning. Instead, we will resort to a specialized dictionary to determine the meaning of the term in its more specialized usage."). I adopt HomeAway's definition, which focuses on the "judgment and discretion" of the actor. The issue, therefore, is whether the City has sufficiently alleged that HomeAway exercises judgment and discretion in performing the functions of a hotel proprietor so as to allege that HomeAway is a managing agent.

The City has failed to allege that HomeAway exercises judgment and discretion and has therefore failed to allege that HomeAway is a managing agent. The City's complaint contains numerous

---

[1] The City defines "manager" as "one that manages: a person that conducts, directs, or supervises something . . . or a particular phase or activity within a business or institution;" and "agent" as "one that acts for or in the place of another by authority from him." (Pl. Resp. [18] at 10 (citing *Webster's Third New Int'l Dictionary*).)

conclusory allegations that HomeAway is in violation of PCC Chapter 6.04. However these allegations are insufficient to defeat a 12(b)(6) motion to dismiss. The City also alleges in its complaint that

> [t]hrough third parties, HomeAway offers several ancillary products and services that include credit card merchant processing and eChecks which allows payment by accepting, receiving, or facilitating payments for rentals, insurance products, and tax return services which help their listing owners comply with applicable tax regulations.

(Pl. Comp. [1] at 11, ¶ 27.) Allegations that HomeAway, through third parties, offers various products and services to its customers falls well short of alleging that HomeAway exercises judgment and discretion in performing the functions of a hotel proprietor. I therefore find that the City has not sufficiently alleged that HomeAway is a managing agent. Accordingly, I DISMISS claims two, four, and six because HomeAway is neither a proprietor of a hotel nor a managing agent and therefore cannot be an Operator under the Ordinance. The City may, however, be able to amend its complaint to allege that HomeAway exercises discretion and judgment such that HomeAway is a managing agent and therefore an Operator.

## C.  HomeAway as a "Booking Agent"

In addition to the requirements imposed by the Ordinance on Operators, the 2015 Amendments to the Ordinance also impose various requirements on Booking Agents. The City's first, third, and fifth claims all allege that HomeAway has not complied with those Booking Agent requirements. Specifically, the City's first claim seeks a declaratory judgment that HomeAway is a Booking Agent; its third claim seeks to reduce fines imposed against HomeAway for various regulatory violations to judgment; and its fifth claim seeks to reduce presumptive taxes against HomeAway to judgment. HomeAway argues that it is not subject to any taxing provisions in the Ordinance as a Booking Agent because the Portland City Charter does not grant the City the authority to impose tax collection obligations on Booking Agents. HomeAway further argues that it does not qualify as a Booking Agent, but even if it did, the specific regulatory Ordinance provisions HomeAway has allegedly violated do not

actually impose any requirements on Booking Agents. While I do not agree with all of HomeAway's arguments, I ultimately agree with both of HomeAway's conclusions and dismiss the City's first, third, and fifth claims.

### 1. *The City's Authority to Impose Tax Collection Obligations on Booking Agents*

HomeAway argues the City exceeded the authority granted to it by the Portland City Charter when it passed the January 2015 amendment regulating Booking Agents. The Charter states, in relevant part:

> The Council may by ordinance impose and levy a tax . . . on gross amounts of money, credit or other things of value *paid to or received for lodging by the owner or operator* of any hotel, motel, apartment or lodging house, mobile home or trailer park or court, or any other place in the City where space designed or intended for lodging occupancy is rented by any person or persons, for any period less than monthly. . . . *The tax imposed shall be collected by the owner or operator of the rental space* in addition to the rental charge, at the time of payment of rent.

Portland City Charter § 7-113(1) (emphasis added). The City argues the Charter grants it authority to impose tax collection obligations on Booking Agents because Booking Agents are "operators" under the Charter. HomeAway argues the Charter limits the City's ability to impose tax collection obligations on only "owners" and "operators," and since HomeAway is not an Operator under the Ordinance, it cannot be taxed as an operator under the Charter.[2] HomeAway contends that allowing the City to pass an ordinance that taxes Booking Agents in addition to Operators would allow the City to act outside of the authority granted to it through the Charter. *See Watkins v. Josephine Cty.*, 243 Or. App. 52, 60, 259 P.3d 79 (2011) ("A municipal charter bears the same relationship to the municipality's ordinances that a state or federal constitution bears to those respective bodies' legislation: It defines what is and is not within the entity's legislative authority."). HomeAway seeks to superimpose the definition of operator found in

---

[2] Neither party contends that the tax collection obligations imposed on Booking Agents under the Ordinance are imposed because they are "owners" under the Charter; rather the obligations are imposed on Booking Agents because the City alleges it is acting under its authority to impose such obligations on "operators" under the Charter.

the Ordinance onto the Charter—since HomeAway is not an Operator under the Ordinance, the City cannot tax HomeAway under the Charter because the City's authority to tax is limited to taxing owners and operators, not Booking Agents. While I agree that the Charter does not grant the City authority to tax HomeAway, I reject HomeAway's argument.

HomeAway's argument assumes the terms "operator" under the Ordinance and under the Charter are identical. While HomeAway appears to argue these terms lend themselves to an apples-to-apples comparison, in reality the comparison is one between apples and oranges. The Portland City Charter was adopted by the Portland voters. *See* OR. CONST., Art. XI, § 2 ("The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon [.]"). In contrast, the Ordinance provision at issue was enacted by the Portland City Council. HomeAway's argument assumes that because I have held that HomeAway falls outside the City Council's definition of Operator as contained in the Ordinance, I must necessarily find that it also falls outside the voters' definition of operator as contained in the Charter. This is clearly not true. A well-recognized canon of construction states that a word or phrase is presumed to bear the same meaning throughout a text. *See, e.g.*, *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). However, no such canon exists stating that a word or phrase is presumed to bear the same meaning in different texts drafted by different actors in different contexts. Accordingly, my finding that HomeAway is not an Operator under the Ordinance does not necessarily preclude the City from imposing tax collection obligations on HomeAway as a Booking Agent under the Charter.

The issue remains, however, whether the Charter grants the City authority to impose tax collection obligations on Booking Agents. This depends on whether "operator" in the Charter is defined broadly enough to include Booking Agents. The Charter does not define operator. The City argues that

since the term is undefined in the Charter, the City Council is empowered to define the term by

ordinance and it did so when it defined Operator and Booking Agent in PCC § 6.04. The City's

argument is flawed. While I owe the City Council deference when interpreting ambiguous terms in the

City's ordinances, *Cascade Broadcasting Co. v. Groener*, 51 Or. App. 533, 537, 626 P.3d 386 (1981), I

do not owe the City Council any deference in interpreting terms in the City's Charter.[3] Rather,

"[b]ecasue the charter provision was adopted by the voters, [my] task is to discern what the voters

intended . . . , which [I] derive by first looking to the text and context of the provision, taking into

account any history of the measure that illuminates the voters' intent." *Brown v. City of Eugene*, 250 Or.

App. 132, 136, 279 P.3d 298 (2012) (internal quotation omitted). Therefore, to decipher the intent of the

voters, I will first look at the ordinary meaning of the term "operator" in the context of the Portland City

Charter. *See Medford Sch. Dist. 549C*, 232 Or. App. at 47 ("In the absence of a definition in the statute

itself, we assume that the legislature intends a statutory term to be given its ordinary meaning. To

ascertain the ordinary meaning of such terms, courts typically look to dictionary definitions.") (citing

*Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 317 Or. 606, 859 P.2d 1143 (1993)).

     The City offers what it labels "the ordinary, dictionary definition of 'operator.'" (Pl. Resp. [18]

at 22). The City proposes the following definition: "a person who actively operates a business . . .

whether as owner, lessor, or employee." (*Id.* at 22–23 (quoting Webster's Third New Int'l

Dictionary 1581).) I agree with the City that this definition reasonably reflects the ordinary meaning of

---

[3] The deference Oregon courts afford to a local government's construction of an ordinance is a matter of pragmatism. For example, in *Cascade Broadcasting Co. v. Groener*, the court explained that it deferred to the county's interpretation of an ordinance "because the county has the duty of administering the ordinance and is its legislative source, and, therefore, the County is in a better position than [the court] to determine the legislative intent." 51 Or. App. 533, 536-37, 626 P.3d 386 (1981) (citing *Bienz v. City of Dayton*, 29 Or. App.. 761, 776, 566 P.2d 904 (1977)). Extending this deference to a city interpreting its own charter, however, would not have the same benefit; the City is in no better position than the court to determine what the voters' intent was when it passed the Charter.

Furthermore, even if I deferred to the City's definition of operator, the City asks me to look at the definition provided in the Ordinance which, as discussed above, does not fit HomeAway. What the City really seeks is to define "operator" in the Charter the same way it defines "Booking Agent" in the Ordinance. The City is trying to do through the back door of conflating terms what it should have done through the front door of defining terms.

operator in the context of the Charter and adopt this definition as a reflection of the voters' intent. In other words, applying the City's proposed definition of operator to the language of the Charter, I find the Charter grants the City authority to impose tax collection obligations on people and entities that actively operate a hotel or motel business[4] whether as owner, lessor, or employee.

There are two reasons why HomeAway, even if it is a "Booking Agent," falls outside this definition and therefore outside of the City's authority granted to it by the Charter to impose tax collection obligations. First, applying the City's definition of operator, the Charter only allows the City to impose tax collection obligations on people and entities that "actively operate" a hotel or motel.[5] The City has not alleged that HomeAway actively operates a hotel. While not alleged in the complaint, at oral argument, the City proposed viewing HomeAway as an active operator of a virtual hotel. To adopt this view would be inconsistent with the purpose of ascertaining an appropriate dictionary definition of "operator" in the first place, which I have done here by adopting the City's own definition. The purpose of referring to the dictionary is to understand what the voters who passed the Charter likely took operator to mean. While the City's definition that I have adopted defines an operator as someone who "actively operates" a hotel as either "owner, lessor, or employee," there is no doubt the voters who passed the Charter in 1971 did not understand operators of hotels to include operators of virtual hotels. Second, the City's definition applied to the Charter only allows the City to impose tax collection obligations on people and entities who are hotel operators as either "owner, lessor, or employee."[6] The City has not alleged that HomeAway owns, leases, or is an employee of a hotel. Therefore, I find the

---

[4] Section 7-113(1) of the Charter also lists apartments, lodging houses, mobile homes or trailer parks or courts, "or any other place in the City where space designed or intended for lodging occupancy is rented by any person or persons, for any period less than monthly." Portland City Charter § 7-113(1).
[5] The City's definition of Booking Agent, as defined in the Ordinance, is much broader than this, including within it "*any person* that provides a means through which a Host may offer a Short-Term Rental for transient lodging occupancy[,]" whether the person actively operates the hotel or not. *See* PCC § 6.04.010(D) (emphasis added).
[6] Once again, the City's definition of Booking Agent is broader than the authority granted to it by the Charter, including within the definition people that neither own, lease, or are employed by a hotel or motel business.

City Council acted *ultra vires* when it attempted to impose tax collection obligations on HomeAway under the authority granted to it by the Charter.

Regardless of any limitation placed on it by Section 7-113(1) of the Charter, the City argues Oregon state statutes provide an alternate source of authority to impose tax collection obligations on HomeAway. Section 2-106 of the Charter authorizes the City Council to "exercise any power or authority granted by Oregon statute to municipal corporations at any time and also to cities of a class which includes the City of Portland," and Oregon state law expressly authorizes Oregon cities to impose a transient-lodgings tax. *See* OR. REV. STAT. ANN. § 320.345 *et seq.* (West 2015). Citing various provisions in the definitions section of the statute, the City contends that "[s]uch a tax may be imposed on any person who 'facilitates the retail sale of transient lodging and charges for occupancy of the transient lodging' or on any 'person that furnishes transient lodgings.'" (Pl. Resp. [18] quoting Or. Rev. Stat. Ann §320.300(12), (13), (14).) Assuming, without deciding, that ORS Chapter 320 authorizes the City to tax those who facilitate the retail sale of or furnish transient lodgings, the City has not sufficiently alleged in its complaint that HomeAway does either of those activities. It is entirely possible, however, if given a chance to amend its complaint, the City may sufficiently allege that HomeAway facilitates the sale of or furnishes transient lodging. The burden is on the City to do so.

Accordingly, since the City does not have the authority to impose tax collection obligations on Booking Agents under the Charter and since it has not sufficiently alleged that HomeAway facilitates the sale of or furnishes transient lodging, I DISMISS the City's fifth claim that seeks to reduce presumptive taxes to judgment.

### 2. *Regulations Imposed on Booking Agents by the Ordinance*

My finding that the City may not impose tax collection obligations on HomeAway as a Booking Agent under the City's allegations in its current complaint does not necessarily preclude it from regulating Booking Agents and fining HomeAway for not complying with those regulations. The City's

third claim asks that I reduce to judgment various fines assessed against HomeAway for regulatory noncompliance. The City's complaint references the Revised Notice of Violation letter dated October 7, 2015, which outlines the grounds for the $1,007,500 in civil penalties assessed against HomeAway that the City seeks to reduce to judgment. The Revised Notice alleges the following:

> HomeAway . . . is in violation of the Portland City Code. . . . These violations are based on [the City's] review of the listings on both [of HomeAway's] websites on April 8, 2015.
>
> 1. Failure to register with the [Portland Revenue] Division within 15 calendar days after commencing business. As a Booking Agent, HomeAway is an Operator subject to this requirement (PCC 6.04.060 A[;] 6.04.170 C)[.]
>
> 2. Failure to collect and remit the Transient Lodging Tax as required for those transactions through HomeAway Payments (PCC 6.04.040 B; 6.04.170 A).
>
> 3. Failure to provide the physical address of a transient lodging occupancy location within Portland and the related contact information (PCC 6.04.060 C; 6.04.170 E).
>
> 4. Failure to prominently display in the advertising on HomeAway.com and VRBO.com the Accessory Short-Term Rental permit or case file number. Only eight of 330 HomeAway.com listings and only nine of the 347 VRBO.com listings included an Accessory Short Term Rental (ASTR) permit or case file numbers in the listings are required (PCC 6.04.060 D; 6.04.170 G)[.]

(Pl. Comp. [1], Ex. 7 at 1). The City cites two provisions of the Ordinance for each of HomeAway's alleged violations. The first provision allegedly establishes the substantive duty or responsibility on HomeAway as a Booking Agent while the second provision "imposes a civil penalty of $500 for each violation" of the Ordinance. PCC § 6.04.170.

HomeAway argues it does not qualify as a Booking Agent, but even if it did qualify, these specific Ordinance provisions cited by the City do not actually impose any requirements or duties on Booking Agents. Assuming, without deciding, that HomeAway does qualify as a Booking Agent under the Ordinance, I will address each Ordinance provision the City alleges HomeAway violated. I find each

15 –OPINION AND ORDER

Ordinance provision fails to impose any duties or responsibilities on Booking Agents and therefore dismiss the City's third claim.

### i) *Failure to register with the Revenue Division under PCC § 6.04.060(A) and 6.04.170 (C)*

The first type of civil penalty the City assesses against HomeAway is for a failure to register with the City's Revenue Division within fifteen calendar days after commencing business. The City claims section 6.04.060(A) establishes HomeAway's responsibility to register with the City and section 6.04.170(C) is the enforcement provision imposing the civil penalty. The City alleges that HomeAway violated this provision once and seeks to reduce a $500 fine to judgment against HomeAway. (Pl. Comp. [1], Ex. 7 at 2).

Section 6.04.060(A) of the Ordinance requires "[e]very person engaging or about to engage in business *as an operator of a hotel . . . .* [to] register within 15 calendar days after commencing business." PCC § 6.04.060(A) (emphasis added). The provision only refers to Operators, not to Booking Agents. Since the City has not sufficiently alleged that HomeAway is an Operator, this provision and the associated penalties for noncompliance do not apply to HomeAway or Booking Agents. I therefore decline to reduce to judgment any penalties associated with this provision of the Ordinance against HomeAway.

### ii) *Failure to collect and remit the Transient Lodging Tax under PCC § 6.04.040(B) and 6.04.170(E)*

The second civil penalty the City assesses against HomeAway is for failure to collect the Transient Lodging Tax and remit the tax to the City. The City claims section 6.04.040(B) imposes the duty on Booking Agents and section 6.04.170(A) imposes a civil penalty for failure to comply. The City alleges that HomeAway violated this provision 677 times, resulting in $338,500 in civil penalties. (*See* Pl. Comp. [1], Ex. 7 at 2).

Section 6.04.040(B) requires an Operator or Booking Agent who "directly or indirectly accepts, receives or facilitates payment" for transient-lodging occupancy to "collect, report and remit transient lodging taxes to the City of Portland." PCC § 6.04.040(B). As explained above, the City has not sufficiently alleged that HomeAway is an Operator. While HomeAway may very well be a Booking Agent under the Ordinance, I have held above that the City may not impose tax collection obligations on HomeAway as a Booking Agent without amending its complaint. Since HomeAway is not required to collect taxes under my holding above, it is not required to comply with section 6.04.040(B).

Notably, if the City were to amend its complaint and allege facts sufficient to demonstrate HomeAway is either an Operator or that HomeAway facilitates the sale of or furnishes transient lodgings such that the City may potentially impose tax collecting obligations under ORS Chapter 320, the City could impose fines based on HomeAway's alleged failure to collect and remit taxes under section 6.04.040(B). However, until the City cures the deficiencies of its complaint, I decline to reduce to judgment any penalties imposed against HomeAway under sections 6.04.040(B) and 6.04.170(A).

### iii) Failure to provide physical addresses under PCC § 6.04.060(C) and 6.04.170(E)

Third, the City seeks $338,500 in civil penalties from HomeAway for 677 alleged violations of section 6.04.060(C) of the Ordinance for failing to provide the physical address of a transient lodging occupancy location. Notably, section 6.04.060(C) imposes no such obligation.[7] But HomeAway makes nothing of this, so neither will I. Presumably the City intended to cite section 6.04.040(C), which in fact

---

[7] Section 6.04.060(C) states, in its entirety:

Said certificate shall, among other things, state the following:

1. The name of the operator;
2. The address of the hotel;
3. The date upon which the certificate was issued;
4. "This Transient Occupancy Registration Certificate signifies that the person named has fulfilled the requirements of the Transient Lodgings Tax Chapter of the City of Portland for the purpose of collecting and remitting the lodgings tax. This certificate does not authorize any person to conduct any unlawful business or to conduct any lawful business in an unlawful manner, or to operate a hotel without strictly complying with all local applicable laws, including but not limited to those requiring a permit from any board, commission, department or office of the City of Portland. This certificate does not constitute a permit."

PCC § 6.04.060(C).

requires "Operators, which include Booking Agents" to "provide all physical addresses of transient lodging occupancy locations within Portland city limits and the related contact information" to the City's Revenue Division upon the Division's request. PCC § 6.04.040(C). Those who fail to comply with this provision are subject to a $500 penalty for each violation under section 6.04.170(E).

HomeAway argues the provision's language, "Operators, which include Booking Agents," is problematic and contends the fact that section 6.04.040(C) mentions Booking Agents is irrelevant. HomeAway points to the Ordinance's definition of Booking Agent, which states "'Booking Agent' means an Operator *or any person . . . .*" PCC § 6.04.010(D) (emphasis added). This definition acknowledges there are some Booking Agents that are not also Operators. HomeAway asserts that, in light of this language, section 6.04.040(C) only imposes the duty to provide addresses on Operators— including those Operators who also happen to be Booking Agents—not on all Booking Agents. I agree. The City cannot define Booking Agent one way in its definition section and choose a different definition in a later provision without expressly doing so. The definition of Booking Agent in the definition section of the Ordinance implies the term Booking Agent is broader than the term Operator, while the language of section 6.04.040(C) assumes the definition of Booking Agent is entirely subsumed within the definition of Operator. I therefore find the definition section of the statute, section 6.04.010(D), controls and section 6.04.040(C) only applies to Operators, not Booking Agents *and* Operators. And since the City has not sufficiently alleged HomeAway is an Operator, I decline to reduce to judgment any penalties imposed against HomeAway under sections 6.04.040(C) and 6.04.170(E).

### iv)  Failure to display a Short-Term Rental permit in advertising under PCC § 6.04.060(D) and 6.04.170(G)

Lastly, the City seeks $330,000 in civil penalties against HomeAway for 660 alleged violations of section 6.04.060(D) of the Ordinance for failing to prominently display permit numbers in its advertising and other listings. Section 6.04.060(D) says:

> Operators of Type A and Type B accessory short-term rentals as described
> in Section Chapter 33.207 must include their Type A Permit Number or
> Type B Conditional Use case file number, as applicable, in all advertising
> and other listing services. . . . Additionally, this Permit Number or
> Conditional Use case file number shall be prominently displayed in the
> rental unit so as to be seen by all short-term occupants.

PCC § 6.04.060(D). Notably, this provision only refers to Operators and does not appear to impose any

duties or responsibilities on Booking Agents. However, in what appears to be the result of poor drafting,

section 6.04.170(G), the companion enforcement provision to section 6.04.060(D), does include a

reference to Booking Agents. Section 6.04.170(G) says:

> A violation includes, but is not limited to . . . . Failure by a Booking Agent
> to prominently display the Accessory Short-Term Rental permit or case
> file number.

PCC § 6.04.170(G). In other words, while the provision that sets forth the duty to display the Accessory

Short-Term Rental permit or case file number does not mention Booking Agents, the enforcement

provision imposes a fine on Booking Agents that fail to comply with the permit requirements.

I find the inconsistency between the two provisions precludes the City from fining HomeAway

for noncompliance with a regulation that did not clearly apply to HomeAway. On its face, section

6.04.060(D) applies to "Operators." HomeAway is not an Operator under the facts alleged in the City's

complaint. While it is true that section 6.04.170(G) does apply to Booking Agents, a Booking Agent

reading that provision would know that it was subject to a fine for noncompliance, but would not know

with what duties and responsibilities it must comply. The provision does not include a cross-reference to

section 6.04.060(D) or any other provision that explains what an "Accessory Short-Term Rental permit

or case file number" is or what information such permits are required to contain. How little information

section 6.04.170(G) contains is readily apparent when compared to section 6.04.060(D). Section

6.04.060(D) explains that "Operators of Type A and Type B accessory short-term rentals, as described

in Section Chapter 33.207, must include their Type A Permit Number or Type B Conditional Use case

19 –OPINION AND ORDER

file number . . . in all advertising and other listing services." PCC § 6.04.060(D). Section 6.04.170(G) does not contain any of this information. Even assuming the City has sufficiently alleged that HomeAway is a Booking Agent, a non-Operator Booking Agent in HomeAway's position would rightfully believe the requirements and details of section 6.04.060(D) does not apply to it because the provision only applies to "Operators." Therefore, I decline to reduce to judgment any penalties imposed against HomeAway as a Booking Agent under sections 6.04.060(D) and 6.04.170(G).

In summary, I find the Ordinance fails to impose any duties or responsibilities on HomeAway as a Booking Agent. I therefore decline to reduce any fines assessed against HomeAway to judgment and DISMISS the City's third claim in its entirety. Because I find that the Ordinance does not impose any duties or responsibilities on HomeAway as a Booking Agent and because I find, as discussed above, the City has not alleged enough facts that HomeAway can be taxed as a Booking Agent, I also DISMISS the City's first claim which asks me to declare that HomeAway is subject to the Ordinance as a Booking Agent.

### D.  Injunctive Relief

The City's seventh claim asks that I issue an injunction to enjoin HomeAway from continuing to conduct allegedly unlawful activities. Because I have found the City insufficiently alleged HomeAway's conduct is unlawful under the Ordinance, I decline to issue an injunction at this time. Accordingly, I DISMISS the City's seventh claim.

### IV.    CONCLUSION

For the reasons explained above, I GRANT Defendant HomeAway's 12(b)(6) Motion to Dismiss [7]. I find that Plaintiff City of Portland has not sufficiently alleged that HomeAway is an Operator under the Ordinance, and I accordingly DISMISS the City's second, fourth, and sixth claims. I also find that the Portland City Charter does not grant the City authority to impose tax collection obligations on

Booking Agents nor has the City sufficiently alleged that HomeAway falls under the City's authority to impose tax collection obligations on Booking Agents under the relevant Oregon state statutes; accordingly, I DISMISS the City's fifth claim. Furthermore, I find the Ordinance does not impose any regulatory duties or responsibilities on HomeAway as a Booking Agent and therefore DISMISS the City's third claim. Because the City's third and fifth claims are dismissed, I also DISMISS the City's first claim. Finally, I decline to issue an injunction at this time and therefore DISMISS the City's seventh claim.

DATED this   7th   day of June, 2016.


/s/ Michael W. Mosman____ ___
MICHAEL W. MOSMAN
Chief United States District Judge